UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher West, ) | C/A No. 5:13-cv-01849-DCN-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Report and Recommendation |
| Director William R. Byars, Jr.; Warden ) | |
| Cecilia Reynolds; Associate Warden Jerry ) | |
| Washington; Major Darren Seaward; Captain ) | |
| Daniel Dubose; Sergeant Baker, Officer Chris ) | |
| Hunt, Officer Robert Bryan, Officer Robert ) | |
| Bigham, Inst. Investigator Sylvesta Robinson, ) | |
| Nurse Luanne Mungo, in their Individual and ) | |
| official capacity as corrections employees SC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment filed on June 16, 2014. ECF No. 100. As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1] order on June 17, 2014, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 101. Plaintiff responded to Defendants' Motion for Summary Judgment on September 24, 2014. ECF No. 127. Defendants' motion is now ripe for consideration. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

    I.      Factual and Procedural Background

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

Christopher West was an inmate at Kershaw Correctional Institution ("KCI") during the time period relevant to his Complaint. Plaintiff filed this action on July 8, 2013. ECF No. 1. In his Complaint, Plaintiff maintains his causes of action are for "8th amendment cruel and unusual punishment, deliberate indifference, [and] racial abuse of intentional harm." *Id.* at 2. Additionally, Plaintiff alleges that he was continuously threatened from September 6, 2011 leading up to what he describes as a "racist attack" that occurred on October 11, 2011. *Id.* at 5. Plaintiff maintains that the October 11, 2011 incident involved Defendants Hunt, Bryan, and Bigham and alleges that when he began to walk out of medical services, Defendant Hunt started to choke him and "grinded [his] head into the concrete." *Id.* at 6.

Plaintiff requests that Defendants' alleged actions or omissions be declared in violation of Plaintiff's rights. *Id.* at 9. He also requests injunctive relief against Defendant Byars to "stop allowing correctional staff officers to abuse plaintiff and prisoners." *Id.* Plaintiff also is requesting compensatory damages against each Defendant in the amount of $8,000; punitive damages against each Defendant in the amount of $15,000; costs; and what he describes as "mental and emotional injury in the amount of $5,000 against each Defendant." *Id.*

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions,

2

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a Complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g.*, *Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

### III. Analysis

#### A. Failure to Exhaust

Initially, Defendants argue they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. ECF No. 100-1 at 6-9. Specifically, Defendants maintain that Plaintiff did not fully complete the grievance process prior to filing this action. *Id.* at 7. Defendants concede that Plaintiff filed a Step 1 Grievance, Number 1821-11, and later appealed the denial of his Step 1 Grievance by filing a Step 2 Grievance on January 16, 2012. However, they maintain that this grievance was still pending as of December 6, 2013. *Id.* at 8.

The undersigned finds that there is a question of fact as to whether administrative remedies were available to Plaintiff given the delay in responding to Plaintiff's Step 2 Grievance. Further, it is still unclear whether SCDC ever finally responded to Plaintiff's Step 2 Grievance. Accordingly, the undersigned will address Defendants' other arguments on the merits to the extent they address the allegations in Plaintiff's Complaint concerning Grievance Number 1821-11. However, not every allegation in Plaintiff's Complaint was raised in Grievance Number 1821-11. *See* ECF No. 100-3 at 21-24, 32. To the extent Plaintiff raises causes of action for denial of medical treatment, inadequate/improper investigation, retaliation, and conspiracy in his Complaint, the undersigned recommends these claims be dismissed for failure to exhaust because Plaintiff did not raise these allegations in Grievance Number 1821-11.

B.  Excessive Force Claim

Defendants argue that there is no evidence that excessive force was used on Plaintiff. ECF No. 100-1 at 12. Rather, Defendants maintain that the situation in question required a need for force, but that the force used was not excessive at any time but was applied in a good faith effort to maintain or restore discipline. *Id.* at 12-13. Furthermore, Defendants contend that there is no evidence from medical records to support a claim that Plaintiff experienced significant injury as a result of alleged excessive force. *Id.* at 17.

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious

(objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendants assaulted and retrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Id.* at 321.

Considering the first and second *Whitley* factors, the undersigned finds Defendants have presented evidence that demonstrates Defendants Hunt, Bryan, and Bigham restrained Plaintiff and used an amount of force necessary to restore order and not for the very purpose of causing Plaintiff harm. According to the incident report, Plaintiff starting "cursing and fussing at Nurse Mungo," and pulled away from Defendant Bigham as Plaintiff walked out of medical. ECF No. 100-2 at 14-16. In response, the SCDC officers restrained Plaintiff on the floor and then escorted him back to his cell. *Id.* Later, Plaintiff was found guilty of refusing to obey orders and threatening to inflict harm on/assaulting an employee and/or members of the public. *Id.* at 6, 17-18. Additionally, a sick call report by Nurse Mungo dated October 11, 2011, notes that Plaintiff became agitated and hostile over issues related to his blood pressure medications and was escorted from medical by security. ECF No. 100-7 at 11. The note indicates that while being escorted from medical, Plaintiff "elbowed officer and security brought [Plaintiff to floor." *Id.*

Therefore, the court finds there was sufficient need for application of force under prong one of *Whitley* based on Plaintiff's aggression towards Defendant Mungo and the correctional Officers and his refusal to obey a direct order. Furthermore, the undersigned finds that a reasonable amount of force was used based on the circumstances of the situation under the second prong of *Whitley*.

Turning to the extent of Plaintiff's injuries under the third prong of *Whitley*, Plaintiff maintains that he sustained injuries to the left eyebrow, neck, and shoulder area. ECF No. 127 at 2. A medical encounter from October 12, 2011 indicates a "small marble-sized knot noted to lateral side left eyebrow area," and an "approx. (sic) 1/2 [inch] superficial abrasion noted to left knee." ECF No. 100-7 at 10. However, this encounter also indicates that there was "no blood noted in ears or nares. No loose teeth noted. No obvious injury or deformity noted to neck or shoulders." *Id.* Later, Plaintiff presented to medical services on October 21, 2011, and medical notes indicate that Plaintiff had no acute distress to the eyebrow where he claimed he was hit and the cranial nerve was within normal limits. *Id.* at 9. After presenting to medical services again on November 10, 2011, Plaintiff was seen at a doctor's clinic on November 15, 2011, at his request. *Id.* at 7-8. Medical notes from the doctor's clinic indicate Plaintiff had a full range of motion in his neck, and Plaintiff was diagnosed with a headache. *Id.* Plaintiff presented to medical services several times thereafter for varying complaints of headaches, shoulder pain, and neck pain. *Id.* at 4-7. However, none of the medical records indicate he suffered more than a minor injuries to these areas. Therefore, the evidence before the court does not support a finding that Plaintiff suffered serious injuries as a result of the force used to restrain him under prong three of *Whitley*.

Finally, the undersigned examines the fourth prong of *Whitley*—the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of

6

the facts known to them. Here, Plaintiff was the initial aggressor and cursed at Defendants. ECF No. 100-2, 13-16. Additionally, he refused an order to "walk" and again cursed at the SCDC correctional officers and pulled away from them. *Id.* The Fourth Circuit has held that a prison official may use reasonable force to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984); *see also Hill v. Crum*, 727 F.3d 312, 328 (4th Cir. 2013) (noting there is a distinction "between instances where force is applied to restore order and instances where it is applied without justification.").

The undersigned finds there is no evidence supporting Plaintiff's claims that Defendants acted with an unreasonable amount of force. Therefore, no genuine issue of material fact exists indicating Plaintiff's Eighth Amendment rights were violated, and the undersigned recommends Defendants' Motion for Summary Judgment be granted on Plaintiff's excessive force claim.

    C. Failure to Protect

Defendants maintain that Plaintiff's purported claim for failure to protect fails on the merits. ECF No. 100-1 at 19-21.

To prevail on an Eighth Amendment claim for failure to protect, a plaintiff must show that (1) the inmate was objectively denied "the minimal civilized measure of life's necessities" and (2) the officers had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). For purposes of a claim that officers failed to prevent harm, the objective portion of the test is met by a showing that the inmate was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* Here, Plaintiff cannot satisfy the first part of the test because evidence does not demonstrate he was denied a minimally safe environment. Rather, evidence demonstrates he was receiving medical attention and began acting aggressively toward Defendant Mungo and SCDC officers at the conclusion of

7

his visit. Additionally, no evidence demonstrates Defendants acted with deliberate indifference to Plaintiff's safety under the second part of the test. *See Odom v. S.C. Dep't. of Corr.*, 349 F.3d 765, 770 (4th Cir.2003) (internal quotations omitted). Specifically, no evidence demonstrates that any Defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997). This subjective assessment "sets a particularly high bar to recovery," *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), which cannot be met by "a showing of mere negligence," *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001).

Accordingly, the undersigned recommends granting Defendants' Motion for Summary Judgment on Plaintiff's purported cause of action for failure to protect.

### D. Harassment

Defendants argue that Plaintiff's allegations concerning verbal threats and other harassment by Defendants fail. ECF No. 100-1 at 23-24. The undersigned agrees.

Verbal threats and words, without more, are not sufficient to state a constitutional deprivation under § 1983. *See Henslee v. Lewis,* 153 Fed. App'x 178, 180 (4th Cir. 2005) *Davis v. Eagleton*, No. 3:12-1292-DCN-JRM, 2012 WL 3029497, at *3 (D.S.C. June 12, 2012). In his Complaint, Plaintiff maintains that Defendants verbally threatened him and threatened to spray him with pepper spray. ECF No. 1 at 3. Additionally, Plaintiff alleges that Defendant Hunt "taunted [him] by coming back and forth watching [him], no words passed just menacing looks." *Id.* To the extent Plaintiff alleges an Eighth Amendment violation based on threats or other harassment by SCDC officers, these allegations do not constitute a constitutional violation and fail as a matter of law. Accordingly, the undersigned recommends granting Defendants' Motion for Summary Judgment on Plaintiff's causes of action for harassment and threats.

E.  Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 100-1 at 26-27. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009).  The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case.  *Id.* at 236.  In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition."  *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that  is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit."  *Id*.  (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the

9

exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

### F. Eleventh Amendment Immunity

Defendants argue that as employees of the SCDC they are not subject to suit in their official capacities. ECF No. 100-1 at 9. The undersigned agrees. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendants are agents or employees of the State of South Carolina, when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A State cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

### G. Respondeat Superior

Defendants contend they are entitled to summary judgment on Plaintiff's purported cause of action for respondeat superior because this doctrine does not apply in § 1983 cases. ECF No. 100-1 at 27. Additionally, Defendants contend that to the extent Plaintiff's allegations may be construed to allege that any Defendant failed to properly supervise SCDC employees, Plaintiff's allegations fail to state a claim. *Id.*

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier*, 896 F.2d at 854. To successfully pursue such a theory, Plaintiff must demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id.*; *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

Plaintiff brought suit against Defendants Byars, Reynolds, Washington, Seward, and Dubose, but Plaintiff does not allege these Defendants had any personal involvement in the incidents giving rise to his Complaint. Further, as discussed above, Plaintiff failed to show facts that establish any of the Defendants violated his constitutional rights. Therefore, the undersigned finds that Plaintiff has failed to establish a causal link between any action or inaction on the part of the treating medical personnel, correctional officers, and their supervisors. Accordingly, the undersigned recommends that summary judgment be granted to all Defendants on any purported cause of action for supervisory liability or respondeat superior.

V.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 100, be GRANTED. Additionally, the undersigned also recommends denying Plaintiff's pending Motion to Compel, ECF No. 120, as moot. In his Motion to Compel, Plaintiff maintains he is needs access to a property bag so that he "can retrieve evidence documents as exhibits." *Id.* at 1. Plaintiff filed a thorough Response to Defendants' Motion for Summary Judgment on September 24, 2014, nearly two months after filing the Motion to Compel. ECF No. 127. Moreover, it appears Plaintiff had access to his legal documents based on the supporting documentation he affixed to his Complaint and Response. Therefore, the undersigned recommends denying Plaintiff's Motion to Compel because it is now moot.

IT IS SO RECOMMENDED.

November 7, 2014                                                          Kaymani D. West
Florence, South Carolina                                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**