IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WEST, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:13-cv-01849-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| DIRECTOR WILLIAM R. BYARS, JR., | ) | |
| WARDEN CECILIA REYNOLDS, | ) | |
| ASSOCIATE WARDEN JERRY | ) | |
| WASHINGTON, MAJOR DARREN | ) | |
| SEAWARD, CAPTAIN DANIEL | ) | |
| DUBOSE, SERGEANT BAKER, | ) | |
| OFFICER CHRIS HUNT, OFFICER | ) | |
| ROBERT BIGHAM, INST. | ) | |
| INVESTIGATOR SYLVESTA | ) | |
| ROBINSON, NURSE LUANNE MUNGO, | ) | |
| and OFFICER ROBERT BRYANT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Kaymani D. West's Report and Recommendation ("R&R") that the court grant defendants' motion for summary judgment. Plaintiff Christopher West ("West") filed written objections to the R&R. For the reasons set forth below, the court adopts in part and rejects in part the R&R, denies defendants' motion for summary judgment with respect to West's excessive force claim, and grants defendants' motion for summary judgment as to all other claims.

### I. BACKGROUND[1]

This case arises out of an alleged incident that occurred on October 11, 2011 at Kershaw Correctional Institution ("KCI") in Kershaw, South Carolina.[2] Specifically,

---

[1] The facts are considered and discussed in the light most favorable to West, the party opposing summary judgment. See Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

1

West alleges that Officer Chris Hunt ("Officer Hunt"), Officer Robert Bryant ("Officer Bryant"), Officer Robert Bigham ("Officer Bigham"), and Nurse Luanne Mungo ("Nurse Mungo") "conspired and carried out [an] unjustified and racist attack" against him. Pl.'s Objections 1. Although he does not allege that they were directly involved in the incident, West claims that the remaining defendants either condoned the actions or ignored his requests for assistance.

Leading up to the alleged incident, West alleges that defendants continuously harassed him from September 6 to September 8, 2011 after he "supposedly threaten[ed]" Officer Hunt on September 6. Compl. 3. On the morning of October 11, 2011, West alleges that he and Officer Hunt were summoned to a disciplinary hearing regarding the threat. Id. at 3-4. During the hearing, Officer Hunt allegedly became hostile and was excused before its conclusion. Id. at 4. After the hearing, West claims that he requested to be separated from Officer Hunt but that his request was denied. Id. As West was being escorted to his cell, he alleges that Officer Hunt looked at him menacingly and that Officer Bigham grabbed his arm aggressively. Id. at 5. West states that he "jerked away" and relayed "[s]ome words of aspersion" toward Officer Bigham. Id. As a result, West claims that he was unjustifiably written up for threatening Officer Bigham. Id.

While visiting medical services later that day, West claims that Nurse Mungo unsuccessfully tried to provoke him, eventually telling him to "get on . . . before I get my boys here to jerk you up." Id. According to West, he calmly stated "no one is going to do nothing to me" and started walking out of health services. Id. at 5-6. When West reached the cage area of the sally port, Officer Hunt allegedly "jumped up and started to

---

[2] West was an inmate at KCI during the time period relevant to his complaint, but is currently incarcerated at Ridgeland Correctional Institution.

choke [him]." Id. at 6.  West then claims that Officers Bigham and Bryant "clipped" him and held him against the floor "while Officer Hunt grinded [his] head into [the] concrete floor" for approximately ten minutes until Officer Bryant stated, "that's enough." Id.

After the incident, West assessed his injuries as "a large knot over [his] left eyebrow, scratches around [his] neck, [a] bleeding . . . knee," and dizzy spells. Id. at 6-7. West alleges that defendants repeatedly ignored his subsequent requests for medical attention. Id.  In fact, West claims that it was not until he became "verbally aggressive" that he was seen by medical services for his injuries. Id. at 7.  Furthermore, West claims that when he was finally examined, the nurse conducting the examination did not accurately record his responses. Id.  He claims that at the time of his examination, the nurse verbally described the knot over his eye as a goose egg and acknowledged scratches and swelling around his neck, but that these observations did not show up in his medical records. Id.  Medical records did note a "marble-sized knot" on West's left eyebrow; a superficial abrasion to left knee; neck and shoulder pain; and that West complained of "seeing black spots" and headaches. Defs.' Mot. Ex. 7.

The evidence submitted by defendants paints a very different picture. First, defendants generally deny harassing West from September 6 to September 8, 2011. Defs.' Mot. 24.  Furthermore, as West was being escorted from his disciplinary hearing by Officers Bryant and Bigham on the morning of October 11, 2011, defendants claim that West threatened to "wet [them] up"[3] and kill their families. Defs.' Mot. Ex. 2. Consequently, West was written up for threatening to inflict harm on an employee. Id. Similarly, defendants' account of the alleged attack on October 11 substantially differs

---

[3] According to Officer Bryant, to "wet them up" means to stab them. Defs.' Mot. Ex. 2.

from West's. Defendants assert that West became verbally aggressive toward Nurse Mungo and Officer Hunt during his medical examination and was asked to leave. Defs.' Mot. Exs. 2, 5. When Officer Hunt ordered West to walk, West allegedly threatened several officers and refused to comply with Officer Hunt's directions. Id. When West eventually starting walking out of medical, he allegedly "pulled away from Officer Bigham," at which point Officer Hunt attempted to restrain him. Defs.' Mot. Ex. 5. However, defendants claim that West then grabbed the bars of the medical services door and continued to resist. Defs.' Mot. Exs. 2, 5, 8. At this point, Officers Hunt, Bryant, and Bigham allegedly restrained and secured West on the floor until they could safely escort him back to his cell. Id. As a result of West's alleged behavior, he was written up for refusing to obey orders. Defs.' Mot. Ex. 2.

West filed this action on July 8, 2013, asserting causes of action for "8th amendment cruel and unusual punishment, deliberate indifference, [and] racial abuse of intentional harm" under 42 U.S.C. § 1983. Compl. 2. On June 16, 2014, defendants filed a motion for summary judgment. On September 24, 2014, West filed a response and defendants replied on October 6, 2014. The magistrate judge issued the R&R on November 7, 2014, recommending that the court grant defendants' motion. West filed objections to the R&R on November 26, 2014. On December 19, 2014, defendants replied to West's objections. West filed a surreply on January 5, 2015. The matter has been fully briefed and is now ripe for the court's review.

## II.   STANDARDS

### A.     Objections to R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). In absence of a timely filed objection to a magistrate judge's R&R, this court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636(b)(1).

### B.     Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary

judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. Id. at 255.

### C. Pro Se Plaintiff

Plaintiff is proceeding pro se in this case. Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9-10 (1980). Pro se complaints are therefore held to a less stringent standard than those drafted by attorneys. Id. Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390-91 (4th Cir. 1990).

### III. DISCUSSION

As an initial matter, defendants contend that West's objections were untimely. The R&R was filed on November 7, 2014. Pursuant to 28 U.S.C. §636(b)(1), West's objections were due fourteen days after "being served with a copy" of the R&R. The date of service is the date the R&R was mailed to West. Fed. R. Civ. P. 5(b)(2)(C). The R&R was mailed to West on November 7, 2014. When adding the three days afforded when service is by mail, Fed. R. Civ. P. 6(d), West's objections were due November 24, 2014. It is undisputed that West did not give his objections to prison officials for mailing until November 26, 2014. Pl.'s Reply 1; see Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that prisoner's mail is deemed filed when prisoner delivers it to prison officials for mailing). Therefore, West's objections were untimely.

Because West's objections were untimely, the court need not conduct a de novo review but must "only satisfy itself that there is no clear error on the face of the record in

order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). However, on review of the record, the court finds clear error in the magistrate judge's consideration of West's excessive force claim.

### A.     Excessive Force

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). To prove a claim that prison officials violated his constitutional rights through the excessive use of force, an inmate must satisfy two requirements. First, a claimant must meet a "heavy burden" to satisfy the subjective component, Whitley v. Albers, 475 U.S. 312, 321 (1986), for which the claimant must show that the force used by the corrections officers "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 6 (1993). In the context of a prison disturbance, this question "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley, 475 U.S. at 320-21).

Factors relevant to an evaluation of the subjective component include "the need for the application of force, the relationship between the need and the amount of force that was used," the extent of the injury, the threat reasonably perceived by the responsible official, "and any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 320-21. "When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain."

Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (internal quotations omitted) (emphasis added).

Second, the claimant must meet the objective component, which concerns whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation. Hudson, 503 U.S. at 2. The objective component is not as demanding because "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . ." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (internal quotation marks omitted). In determining whether a complaint states a claim for excessive force, the "core judicial inquiry" does not concern the extent of the injury but rather the nature of the force—"specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins, 559 U.S. at 39 (quoting Hudson, 503 U.S. at 7). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9; see Wilkins, 559 U.S. at 38 (holding that an inmate who was the victim of excessive force did not lose the ability to pursue an excessive force claim because he had "the good fortune to escape without serious injury").

However, the extent of injury suffered by the inmate is still relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force plausibly could have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the amount of force applied. Wilkins, 559 U.S. at 37 (rejecting the notion that an excessive force claim involving only de minimis injury is subject to automatic dismissal). Not "every malevolent touch by a prison guard

gives rise to a federal cause of action." Hudson, 503 U.S. at 9.  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. (internal quotation marks omitted); see Wilkins, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (quoting Hudson, 503 U.S. at 9)).  Nonetheless, the Supreme Court has cautioned that "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts."  Wilkins, 559 U.S. at 38.

The magistrate judge analyzed West's excessive force claim according to the above law; however, she did so in the light most favorable to defendants.  See R&R 5 ("[T]he undersigned finds Defendants have presented evidence that demonstrates Defendants Hunt, Bryan, and Bigham restrained Plaintiff and used an amount of force necessary to restore order and not for the very purpose of causing Plaintiff harm."); 7 ("[T]he undersigned finds there is no evidence supporting Plaintiff's claims that Defendants acted with an unreasonable amount of force.").  Analyzing West's claim in the light most favorable to him, the court determines that summary judgment should be denied.

The Fourth Circuit's recent opinion in Thompson v. Shelton, which involved a similar factual scenario, is instructive.  541 F. App'x 247 (4th Cir. 2013).  There, the plaintiff alleged that he was punched, kicked, and knocked to the ground.  Id. at 248. Medical records noted that, following the incident, the plaintiff's right eye was very red and swollen, the skin on his upper back was red, and he had superficial abrasions on his

9

right arm and left leg. Id. While prison officials claimed that he had assaulted staff members and they were attempting to get him under control, the plaintiff testified that he did not refuse any instruction or provoke an attack. Id. at 248–49. The Fourth Circuit found that the district court erred in granting summary judgment, holding that "[a]ccording to the version of events sworn to by [the plaintiff] and supported at least in part by his medical records, a jury could infer that the officers wantonly administered significant force to [the plaintiff] in retaliation for his conduct rather than for the purpose of bringing him under control." Id. at 250.

Here, West asserts that he was simply looking back into the medical examination room at the time of the incident and that there was "no reason" for defendants' behavior. Pl.'s Aff. 1; see also Pl.'s Objections 5 ("There wasn't a threat because plaintiff neither caused [n]or provoked any action."). West also claims that at the time of the incident, he was in belly chains and leg irons. Pl.'s Aff. 1; Pl.'s Objections 4. Additionally, although West has not alleged particularly serious injuries, he has alleged more than de minimis injuries which are supported, at least in part, by his medical records—namely, a "marble-sized knot" on his left eyebrow; a superficial abrasion to left knee; neck and shoulder pain; "seeing black spots"; and headaches. Defs.' Mot. Ex. 7.

As in Thompson, the court finds that according to the version of events sworn to by West and supported, at least in part, by his medical records, a jury could infer that the officers wantonly administered significant force to West in retaliation for his conduct rather than for the purpose of bringing him under control. 541 F. App'x at 250; see also Lott v. Scott, No. 2:12-cv-02471, 2014 WL 4199172, at *3 (D.S.C. Aug. 21, 2014) (denying summary judgment on excessive force claim where prisoner claimed to have not

caused a disturbance and alleged a more than de minimis injury supported in part by medical records).

Therefore, the court denies Officers Hunt, Bigham, and Bryant summary judgment as to West's excessive force claim.[4]

### B.     Qualified Immunity

Because the court finds there is a genuine issue of material fact as to West's excessive force claim, it must also address the magistrate judge's determination that defendants are entitled to qualified immunity. See R&R 9–10.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "[I]n order for [a plaintiff] to defeat [a] motion for summary judgment, (1) there must be a genuine factual dispute as to whether Defendants violated [the plaintiff's] constitutional rights, and (2) those rights must have been clearly established at the time he suffered his injuries." Stewart v. Beaufort Cnty., 481 F. Supp. 2d 483, 489–90 (D.S.C. 2007); see also Evans v. Chalmers, 703 F.3d 636, 646 (4th Cir. 2012) ("To escape dismissal of a complaint on qualified immunity grounds, a plaintiff must (1) allege a violation of a right (2) that is clearly established at the time of the violation." (citing Pearson, 555 U.S. at 231)).

As discussed above, there is a genuine factual dispute as to whether defendants violated West's constitutional rights. Moreover, at the time of the defendants' alleged

---

[4] West does not allege that any other defendants used excessive force.

actions, it was clearly established that unnecessarily beating a prisoner violates the Eighth Amendment, even if he is not seriously injured.  <u>Wilkins</u>, 559 U.S. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

Therefore, Officers Hunt, Bigham, and Bryant are not entitled to qualified immunity as to West's excessive force claim.

### IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** in part and **REJECTS** in part the magistrate judge's R&R; **DENIES** defendants' motion for summary judgment as it relates to West's excessive force claim against Officers Hunt, Bigham, and Bryant; **GRANTS** defendants' motion for summary judgment as to all other claims, including any claims made against defendants in their official capacities; and **DENIES** West's motion to compel as moot.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 30, 2015**
**Charleston, South Carolina**